Com. of Pa. *v.* Markmann, Jr., Appellant.

Argued March 12, 1934.

Before Trexler, P. J., Keller, Cunnigham, Baldrige, Stadtfeld, Parker and James, JJ.

*Samuel Lippincott Borton,* for appellant.

*James W. Tracey, Jr.,* Assistant District Attorney, and with him *Charles F. Kelley,* District Attorney, for appellee.

Opinion by Stadtfeld, J., July 13, 1934:

The appellant, Peter H. Markmann, Jr., was indicted in the court of oyer and terminer and general jail delivery and quarter sessions of the peace of the County of Philadelphia on two bills; one charging him with unlawfully engaging in the business of undertaking, and the care, preparation, disposition and burial of the bodies of deceased persons on March 8, 1931, and on divers days between that date and August 30, 1931, in violation of the Act of June 7, 1895, P. L. 167, and its supplements; the second bill charging that on September 22, 1931, and on divers other days there-

after, between that date and August 23, 1932, being a person not holding a license to operate as an undertaker in this Commonwealth under the then existing laws, the defendant did unlawfully engage in the business of undertaking, and in the care, embalming and disposition and burial of the bodies of divers deceased persons, in his own name and on his own account, contrary to the Act of June 10, 1931, P. L. 485.

The appellant pleaded not guilty, and in September, 1933, was tried before PARRY, J., and a jury.

It was shown by the Commonwealth's witnesses that within the periods named in the indictments the defendant, in numerous specific instances, had gone to the families of persons found dead on the street or in the morgue, had apprised them of the death, solicited the work of caring for the bodies, made funeral arrangements with the family, inserted funeral notices in the newspaper, accompanied the members of the family to the casket makers, rendered bills for the burial, received the money and receipted for the same.

The defendant testified in his own behalf, and admitted all these activities, as testified to by the Commonwealth's witnesses, and also that for the past eight years he had engaged in the business of embalming and held himself out as an embalmer, and that he had never applied for a license as an undertaker.

The defense was that defendant had never represented himself as engaged in the undertaking business, that the business was done by a foreign corporation styled "DeLuxe Funeral Homes, Inc." (of which defendant was a stockholder and secretary and apparently the active manager in its operations) and that after the corporation was refused a license to engage in the undertaking business, he had called in other licensed undertakers to conduct the funerals on the basis of which he claimed that he was a paid employee of such licensed undertakers. When the corporation was organized, it appears to have taken over

whatever facilities and equipment Markmann had to participate in the business of preparing and burying the dead. He claimed to have put the same in, in lieu of a cash subscription for stock. Cards were circulated by him with his name on them, "P. H. Markmann, Jr., Embalmer."

The case was submitted to the jury on a charge which left to them the determination of whether the activities above recited constituted engaging in the undertaking business in violation of the said Act of June 7, 1895, and its supplements; and second, whether the defendant, who admitted that he had engaged in embalming for the last eight years without taking out a license, was guilty under the said Act of June 10, 1931.

The jury returned a verdict of guilty under both indictments.

The defendant filed a motion for a new trial, and assigned as reasons the specific grounds that the court had directed a verdict of guilty and that the said Act of June 10, 1931, was unconstitutional.

The trial judge, sitting alone as a court-en-banc, dismissed the motion for a new trial and imposed sentence. Whereupon the defendant took this appeal.

The assignments of error relate, (1) to the charge of the court, and the refusal to direct a verdict of not guilty; (2) that the argument of the motion and reasons for a new trial was not heard by the court en banc; and (3) that the act of 1931, under which the second indictment was found, is unconstitutional.

The facts were practically uncontradicted. The defendant relied chiefly upon the fact that he had not represented himself as an "undertaker," that he had acted as secretary of the "DeLuxe Funeral Homes, Inc.," and that he was a bona fide employee of a licensed undertaker.

The Act of June 7, 1895, P. L. 167, is entitled an Act "To provide for the better protection of life and

health by diminishing the danger from infectious and contagious diseases through the creation of a State Board of Undertakers in the cities of the first, second and third classes, with systematic examinations, registration and licenses for all entering the business of burying the dead, and penalties for violation of the provisions thereof." Under Sec. 5 of the act, it is made the "duty of any person, persons or corporation, engaged in the business of undertaking, care, preparation, disposition and burial of the dead at the time of the passage of this act to cause, within six months after the passage of this act, his, her, or its name or names, residence and place of business, to be registered" with the board created under said act; and under section 6, any person, persons or corporations who shall hereafter engage in such business in cities of the first, second or third classes, and before any person, persons or corporations, now so engaged in said business, who shall have failed to register with said board in accordance with section five of said act, shall continue in said business, such person or persons comprising such corporations shall apply to said board for a license, to practice the same, etc., and under section 8 the license shall designate the particular place or places at which the business shall be carried on.

By the amendment of May 1, 1905, P. L. 330, it is, inter alia, provided that the body of any person whose death occurs in the State shall not be interred, cremated or otherwise disposed of until a permit for burial, removal or other disposition shall have been issued by the registrar of the registration district in which the death occurs, and the undertaker, or person acting as undertaker, shall be responsible for obtaining and filing the certificate of death with the registrar, and securing a burial or removal permit, prior to any disposition of the body.

The Act of June 10, 1931, P. L. 485, is entitled an Act "To provide for the better protection of life and

health of the citizens of this Commonwealth by requiring and regulating the examination, licensure and registration of persons, and registration of corporations, engaging in the care, preparation and disposition of the bodies of deceased persons; and providing penalties.'' Section 1 (a) defines the word ''undertaker'' as follows: ''The word 'undertaker' shall include any person engaged in the business or profession of undertaking, or the care, embalming, or disposition or burial of the bodies of deceased persons, in his or her own name and on his or her own account, whether such person shall use the title of 'undertaker,' 'undertaker and embalmer,' 'embalmer,' 'funeral director,' 'mortician' or other term.'' Section 2 requires any person, not holding a license, desiring to operate as an undertaker in the Commonwealth to make application for examination and licensure. Section 6 provides, inter alia, that a license shall authorize the conduct of such business or profession at the particular place of business so designated and no other, and by the particular person designated, and only one license shall be granted to or held by any individual, and no undertaker granted an original license under this act shall conduct business under any other name than the name appearing on his or her license.

The defendant, having admitted that he had for eight years preceding held himself out as an embalmer, and that the statements of the Commonwealth's witnesses, as to his activities, were correct, came clearly within the definition of Section 1 (a) of the Act, defining the term ''undertaker.'' Neither the appellant, nor the corporation, ''DeLuxe Funeral Homes, Inc.,'' was licensed to engage in the business of undertaking. The corporation was a foreign corporation and was not registered to engage in business in this Commonwealth until May, 1931, long after many of the funerals referred to in the testimony had taken place. The defendant used the names of other undertakers to obtain

burial permits and in the purchase of burial equipment, but this was necessary in order that he might obtain the burial permits, and in order that, in accordance with the trade requirements of casket makers, he might obtain funeral equipment, both of which could be obtained only by licensed undertakers. In many instances, the undertakers whose names were so used, did not participate in any of the activities connected with the preparation or burial of the body. There was nothing to sustain the position that appellant was merely an employee of a licensed undertaker. His method was apparently merely a subterfuge to do indirectly that which he could not do directly. If the appellant was engaged in the practice of undertaking, or the care, preparation, disposition or burial of dead bodies, without being licensed, he was violating the Acts of Assembly referred to.

The trial judge submitted the case to the jury, saying: "It is the right and province of the jury, and not the judge, to say 'guilty' or 'not guilty,' so if you find that this man did these acts, and he admits he did them, and you draw the inference therefrom that he was practicing undertaking, or the care, preparation, disposition or burial of dead bodies, then you ought to find him guilty on the bill, charging a violation of the act of 1895 as amended, or if you do not draw that inference you can find him not guilty.

"With regard to the act of 1931, although I have expressed the opinion to you that there is no logical escape from the conclusion that he has violated the provisions of that act, still the law gives you the power to determine that question and I leave it open to you to find him guilty or not guilty."

In view of the defendant's admission as to his activities in doing the ordinary work of an undertaker, and his frank admission that he had been engaged in the embalming business without a license, no other verdict than that of guilty could properly have been

found by the jury. We feel that the case was fairly tried and properly submitted.

Appellant contends that there was error in the disposition of the motion for new trial in that the trial judge sat alone, instead of convening with his colleagues as a court in banc.

In Com. v. Parker, 294 Pa. 144, the Supreme Court sustained a conviction in a homicide case where the motion for a new trial was heard by the trial judge sitting alone. In that case the Supreme Court distinguished between civil and criminal cases, saying that it was proper to have a full bench in a homicide case, and that had a request for a full bench been made and refused, the case might be returned to the court below for such review, if the record suggested any doubt of the justice of the verdict.

Under the Act of February 3, 1843, P. L. 8, Par. 5, PS 17, Par. 477, it is, inter alia, provided, in relation to trials in the quarter sessions and the oyer and terminer courts in Philadelphia County, "in all cases where the judge who tries the case, has suffered to be entered a rule to show cause why a new trial should not be granted, or the judgment arrested, the same shall, at the request of either party, be heard before the judges of the court." In the instant case, no such request was made, and we are not convinced that the verdict was not a just one. There is therefore no merit in the assignment in relation to the disposition of this motion.

Appellant attacks the constitutionality of the act of 1931, supra, because of the alleged defective title as being ambiguous and dealing with at least two or more subjects and, therefore, it is an improper exercise of the police power, and the "embalmer" has been deprived of his right to pursue a lawful vocation without due process of law.

"Embalm" is defined by Webster "To treat (a dead body) with special preparations, as aromatic oils or

arsenic, in order to preserve it from decay." This is fairly comprehended in the title of the act in referring to the "care, preparation ...... of the bodies of deceased persons." We believe that the title is sufficiently clear to put any one interested on notice. It is not necessary to cite cases in support of the proposition that the title to an act need not be an index of its contents. That the subject matter of the act is a proper one for the exercise of the police power has been held by this court in an exhaustive opinion by the late President Judge RICE, in the case of Commonwealth v. Hanley, 15 Pa. Superior Ct. 271 involving the constitutionality of the Act of June 7, 1895, P. L. 167, under which the first indictment was found. For the reasons therein stated, we do not consider that there is any merit in the contention of appellant in relation to the act of 1931. Nor do we think that the act deals with more than one subject.

The assignments of error are overruled. The judgment is affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.