Commonwealth *v.* Kloiber, Appellant.

Argued April 23, 1954.    Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Everett Kent,* with him *Theodore R. Gardner,* for appellants.

*George J. Joseph,* First Assistant District Attorney, with him *M. Jack Morgan,* District Attorney, for appellee.

OPINION BY MR. JUSTICE BELL, June 28, 1954:

Two armed men entered the office of the R & F Dress Company at 1214 Gordon Street, Allentown, Pa., at approximately 12:35 o'clock p.m. on February 29, 1952, held up the company's bookkeeper and president, seized the cash payroll, and escaped in a black sedan car which was waiting for them and was being driven by a third person.

Senkovich and defendant, Stephen Kloiber, were alleged to have been the two armed robbers and William Kloiber the driver of the getaway car. Senkovich and Stephen Kloiber, after being arrested, gave signed confessions to the Pennsylvania state police admitting their participation in the robbery; and Senkovich also implicated William Kloiber as the driver of the getaway car. Senkovich pleaded guilty and was sentenced by the Court.

Stephen Kloiber and William Kloiber were separately indicted but were tried together. At the trial of this case the president and the bookkeeper who were held up, positively identified Stephen Kloiber as one of the two robbers, although they had failed to do so on two previous occasions. William Kloiber did not make any confession or take the witness stand. Senkovich at the trial of these defendants repudiated his written confession and testified he was with two other men named Kelly and John Crawford.

Stephen and William were convicted and from the judgment and sentence of the Court of Quarter Ses-

sions they appealed to the Superior Court. Their conviction was sustained by the Superior Court and this Court allowed an allocatur.

Defendants allege numerous errors in their trial, several of which we shall discuss.

Defendants' first complaint is that the Court erred in refusing their request for separate trials. Stephen Kloiber and William Kloiber were each separately indicted on five counts. The first count against Stephen was one of armed robbery; the first count against William was one of robbery with accomplice; the other four counts, charging robbery, assault with intent to rob, larceny and receiving stolen goods, were identical. Both men were charged with participating in the same robbery and the same crimes at the same time, and not with participating in separate and distinct offenses. The Commonwealth called 14 witnesses in its case in chief and with several exceptions, the testimony of all witnesses was material and relevant as to both defendants.

The trial Judge because of his position and for other obvious reasons has been given a discretion to determine whether a number of bills of indictment should be consolidated and tried together, and his exercise of discretion in such matters will not be reversed by an appellate Court unless there has been a manifest abuse of discretion or a joint trial is so unfair as to be clearly unjust and prejudicial to one or more of the defendants. Especially is a joint trial permissible, if not advisable, when the crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to both defendants: *Com. v. Mulroy,* 154 Pa. Superior Ct. 410, 36 A. 2d 337; *Com. v. Valotta,* 279 Pa. 84, 123 A. 681; *Com. v. Quinn,* 144 Pa. Superior Ct. 400, 405, 19 A. 2d 526.

There was no manifest abuse of discretion or prejudicial error in trying these two defendants together on all of the aforesaid indictments.

Defendants also allege a number of errors in the charge and in the rulings of the Court. The first error alleged is that the Court erred in the following portions of its charge: ". . . it is admitted in this case that at least two people took part who were in the dress goods plant, and then there is no contradiction that there was a third party who was in an automobile. . . . I think there is no doubt about William Kloiber having been at the Silver Star Hotel with Michael Senkovich that morning." The Court subsequently left to the jury the determination of all the facts and said it was their recollection and their opinion of the evidence which prevailed; and they had the right to decide all the facts and questions involved in the case.

There is no reversible error in these excerpts from the charge, since there was ample evidence and reasonable ground for the Court's statements and they did not constitute, as defendants contend, statements of fact within the principle of *Commonwealth v. Chambers*, 367 Pa. 159, 79 A. 2d 201. In that case the Court said (page 164) : "It is the exclusive province of the jury, not the court, to decide all the facts, the inferences therefrom, the credibility of the witnesses and the weight and effect to be given to all of the testimony. While the main purpose of a judge is to state and explain the law and briefly review the evidence, it is always the privilege and sometimes the duty of a trial judge to express his own opinion, including his opinion of the weight and effect of the evidence or its points of strength and weakness or even the guilt or innocence of the defendant and the verdict which, in his judgment, the jury should render, provided (1) there is reasonable ground for any statement he may

make; and (2) he clearly leaves to the jury the right to decide all the facts and every question involved in the case, regardless of any opinion of the court thereon: Commonwealth v. Cunningham, 232 Pa. 609, 611, 81 A. 711; Commonwealth v. Foster, 364 Pa. 288, 293, 72 A. 2d 279; Commonwealth v. Simmons, 361 Pa. 391, 407, 65 A. 2d 353; Commonwealth v. Watts, 358 Pa. 92, 97, 56 A. 2d 81; Commonwealth v. Jones, 341 Pa. 541, 551, 19 A. 2d 389; Commonwealth v. Nafus, 303 Pa. 418, 420-1, 154 A. 485."

We come now to the following excerpt from the Court's charge: "I think there is no contradiction of William Kloiber having been at the farm and having gone with Michael Senkovich, at least the first time, to the Silver Star. So that *William Kloiber does not make a denial* * that he was with Michael Senkovich on the early morning when this robbery occurred . . .". There was ample testimony to prove that William Kloiber was at the farm and at the Silver Star with Senkovich at the times in question; but the question remains whether this constituted an adverse comment by the Court on the defendant's failure to testify in violation of §10 of the Act of 1887.

William Kloiber pleaded "not guilty" and did not take the witness stand. After correctly telling the jury that it is their understanding and recollection of the testimony which governs and prevails, and that they are the persons to determine its weight and credibility, the Court said: "There is one more thing to be said to you, and that is that any person accused of crime has a constitutional right not to testify. They have a right not to take the stand if they see fit to do so, and I want to impress on you that the fact that a person has chosen to exercise that constitutional right does

---

* Italics throughout, ours.

not give you the power to draw any unfair or adverse inference concerning that person. To put it specifically, William Kloiber chose not to testify in this case. That was his constitutional privilege, and the fact that he exercised that right does not give you the right to draw any inference that could be adverse to him in this case." That was certainly a very fair and proper statement of the law.

If the Court's charge read as a whole is accurate and fair and contains no basic or prejudicial error, it will be sustained even though isolated excerpts taken therefrom are or might be objectionable: *Commonwealth v. Donough,* 377 Pa. 46, 53, 103 A. 2d 694; *Commonwealth v. Barnak,* 357 Pa. 391, 406, 54 A. 2d 865; *Commonwealth v. Patskin,* 372 Pa. 402, 422, 93 A. 2d 704. The statement of the trial Judge that William Kloiber does not make a denial that he was with Senkovich on the early morning when this robbery occurred (but at an earlier hour), does not under our prior decisions constitute reversible error: *Commonwealth v. Thomas,* 275 Pa. 137, 141, 118 A. 667; *Commonwealth v. Holley,* 358 Pa. 296, 300, 301, 56 A. 2d 546; *Commonwealth v. Schuster,* 158 Pa. Superior Ct. 164, 168, 169, 44 A. 2d 303; *Commonwealth v. Nelson,* 294 Pa. 544, 144 A. 542; *Commonwealth v. Chickerella,* 251 Pa. 160, 96 A. 129. Cf. however, *Commonwealth v. Green,* 233 Pa. 291, 82 A. 250; *Commonwealth v. Foley,* 24 Pa. Superior Ct. 414.

In *Commonwealth v. Thomas,* 275 Pa., supra, the Court approved the charge of the trial Judge in a first degree murder case and said (pages 140, 141): " '. . . The *defendant has not seen fit to produce any evidence* in answer to the charge of the Commonwealth, and in answer to the evidence produced by the Commonwealth. It is the law, and I so charge you, that the fact that the defendant does not go on the stand,

or does not produce any evidence in his own behalf, is not to be taken and considered as any evidence of guilt, or to be taken and considered as anything against him whatsoever. . . .' . . . When the general evidence Act of 1887 (May 23, 1887, P. L. 158, section 10) was passed the earlier statutes mentioned were repealed, and an important modification of this direction was made. It was then provided, and the act is now in force: 'Nor may the neglect or refusal of the defendant actually on trial in a criminal court to offer himself as a witness be treated as creating any presumption against him; or be adversely referred to by court or counsel during the trial.' It is to be noted that *no longer does the mere mention of the defendant's failure to take advantage of his right to be heard constitute error* (Com. v. Brown, 16 W.N.C. 557), but to justify reversal the reference thereto must be 'adverse'.

"So, a statement that *the evidence of the Commonwealth is uncontradicted* is harmless: Com. v. Chickerella, 251 Pa. 160; Com. v. Martin, 34 Pa. Superior Ct. 451; Com. v. Rizzo, 78 Pa. Superior Ct. 163. To constitute error, the remark must go further, indicating a duty of the defendant to testify, and permitting an unfavorable inference to be drawn from his failure to do so: Com. v. Green, 233 Pa. 291; Com. v. Foley, 24 Pa. Superior Ct. 414. . . ."

In *Commonwealth v. Chickerella,* 251 Pa., supra, the defendant's conviction of murder in the first degree with the penalty of death was sustained even though the Court charged the jury: "There has been no dispute as to the facts; that is to say, the *defense has not made any denial* of the testimony as offered by the Commonwealth."

In *Commonwealth v. Schuster,* 158 Pa. Superior Ct. 164, 44 A. 2d 303, the Court said (pages 168-169):

" '. . . Only Vincent J. Schuster, the defendant, is charged in this indictment, and Vincent J. Schuster *did not appear as a witness* in his own behalf.' The statute does not prohibit a mere reference to the fact that a defendant has not taken the witness stand, Com. v. Nelson, 294 Pa. 544, 144 A. 542; Com. v. Yollin, 115 Pa. Superior Ct. 215, 175 A. 429; the prohibition is against adverse comments on the part of the court or prosecutor. Com. v. Chickerella, 251 Pa. 160, 96 A. 129; Com. v. Martin, 34 Pa. Superior Ct. 451. 'To constitute error, the remark must go further, indicating a duty of the defendant to testify, and permitting an unfavorable inference to be drawn from his failure to do so: Com. v. Green, 233 Pa. 291, [82 A. 250]; Com. v. Foley, 24 Pa. Superior Ct. 414'; Com. v. Thomas, 275 Pa. 137, 141, 118 A. 667. We are convinced the court intended no adverse reference, and that the jury drew no unfavorable conclusions, as a result of the portion of the charge here impugned."

In *Commonwealth v. Nelson,* 294 Pa., supra, Mattie Nelson, indicted for murder, was convicted of manslaughter. The Court held the following portion of the charge did not transgress the rule: "Frank Day is dead. He is not here to tell his story. She is alive; she is here on trial."

In *Commonwealth v. Holley,* 358 Pa., supra, a conviction of murder in the first degree with penalty of death was affirmed, even though the trial Judge pointed out that the defendant's version of the killing was not given from the witness stand. This Court said (pages 300, 301): "Appellant's contention that the court below commented adversely on the fact that the appellant failed to testify on his own behalf, contrary to the Act of May 23, 1887, P. L. 158, 19 PS Section 631, is untenable. . . . Reference to the failure of a defendant to testify on his own behalf, to constitute re-

versible error, must call the jury's attention to the fact that the defendant has not testified and must reasonably lead to an inference that he would have taken the stand if not guilty: Cf. Commonwealth v. Zukovsky, 324 Pa. 588, 591, 188 A. 349; Commonwealth v. Thomas, 275 Pa. 137, 118 A. 667; Commonwealth v. Foley, 24 Pa. Superior Ct. 414. Appellant's rights were adequately protected by the trial judge when he said: 'He does not have to take the stand to testify on his own behalf if he does not want to, and the fact that he does not is not to be taken as an admission of guilt of any particular degree of crime.' "

In the light of these authorities we find no reversible error in the charge of the Court on this point. We are convinced that the trial Judge did not, intentionally or otherwise, refer adversely to defendant's failure to testify and that the jury would not have been warranted in drawing an adverse inference from this charge. However, we cannot refrain from cautioning the lower Courts against any statement or charge, either in its entirety or in isolated portions, which permits a jury to draw an unfavorable inference against a defendant from his failure to testify.

Defendants allege reversible error in the Court's refusal of the following point for charge: "8. If you find the written statement of Defendant was coerced in any way or is untruthful, then you must reject it entirely in your consideration of the case. Persons do not react the same way in identical situations. Where one is emotional, impulsive and quick to assert his rights, another may be timid and easily cowed, especially in the presence of the officers of the law. The rule as to considering any reasonable inference reflects only in the manner in which the average man is apt to conduct himself in such a circumstance. There are some people who, though guiltless of wrong-doing,

have a deep seated fear of policemen and processes of law, so those are facts which you would take into consideration in determining whether you would believe that the statement of STEPHEN KLOIBER was coerced in any way, and consequently, untruthful and not voluntarily made. Refused."

The Court's charge to the jury was adequate under the circumstances of this case and the point as presented was properly refused. Where a point for charge contains good law and bad law a Court is not bound to remold the point and separating the good from the bad, the wheat from the chaff, affirm that portion of the point which is an accurate statement of the law: *Commonwealth v. Wilcox*, 316 Pa. 129, 173 A. 653; *Commonwealth v. Girardot*, 107 Pa. Superior Ct. 274, 163 A. 362. If defendant had presented a point: "If you find the written statement of defendant was coerced in any way, then you must reject it entirely in your consideration of the case"—that would have been an accurate statement of the law, and would have had to be affirmed by the trial Judge unless he had already adequately covered it in his charge to the jury: *Commonwealth v. Simmons*, 361 Pa. 391, 401, 65 A. 2d 353; *Turner v. Pennsylvania*, 338 U. S. 62; *Commonwealth v. Johnson*, 365 Pa. 303, 74 A. 2d 144. But it is not the law that if the jury finds the written statement of the defendant or some parts of it was untruthful it must reject it entirely.

In *Commonwealth v. Donough*, 377 Pa. 46, supra, we said (page 50) : "In Commonwealth v. Homeyer, 373 Pa. 150, 94 A. 2d 743, where the defense was suicide, the Court said (page 153) : 'Defendant, like most defendants, proceeds on the assumption that you must believe all [or none] of his statements or confessions; of course, that is erroneous; a jury can

believe all or a part of or none of a defendant's statements, confessions or testimony.' "

The next error alleged is the Court's refusal of the following point for charge: *"No class of testimony is more uncertain and less to be relied upon than that as to identity* and, where great doubt is cast upon it by witnesses themselves, it is submitted to the jury with great caution, and if such testimony creates in your mind a reasonable doubt as to the identity of the defendant, your verdict must be not guilty."

The question of identity was fairly and adequately covered in the Court's charge, which consumed two pages on this point. The Court called the jury's attention to the failure of the president and bookkeeper of the dress company to identify defendants on two prior occasions in contrast with their positive identification of defendants at the trial, and told the jury that there can be mistakes made insofar as identification testimony is concerned, and that the jury must accept such testimony with caution. We might dismiss defendants' objection on this point by the following quotation from *Commonwealth v. Smith,* 374 Pa. 220, 236, 97 A. 2d 25: "All of the points set out in these requests had been elaborately considered by the court in its general charge and there was no error in its refusal to repeat them: Com. v. Weston, 297 Pa. 382, 147 A. 79; Com. v. Zietz, 364 Pa. 294, 298, 72 A. 2d 282." But we think in fairness to the defendants as well as to the Bench and Bar, we should specifically rule on this point (a) because *the italicized part of it* is an exact quotation from *Commonwealth v. House,** 223 Pa. 487, 72 A. 804, and *Commonwealth v. Sharpe,* 138 Pa. Superior

---

* This quotation from *Commonwealth v. House* has never been repeated by this Court, although it has been reiterated by the Superior Court.

Ct. 156, 10 A. 2d 120, and (b) because loose and different statements have been made on the subject of identity. We believe such a generalization is too broad a statement of the general principle or rule of law on this subject and a trial Judge should not so charge the jury.

Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution—indeed the cases say that "his [positive] testimony as to identity may be treated as the statement of a fact": *Commonwealth v. Ricci*, 161 Pa. Superior Ct. 193, 195, 54 A. 2d 51; *Commonwealth v. Sharpe*, 138 Pa. Superior Ct. 156, 159, 10 A. 2d 120. For example, a positive, unqualified identification of defendant by one witness is sufficient for conviction even though half a dozen witnesses testify to an alibi: *Commonwealth v. Pride*, 143 Pa. Superior Ct. 165, 167, 18 A. 2d 879; *Commonwealth v. Saldutte*, 136 Pa. Superior Ct. 52, 56, 7 A. 2d 121; *Commonwealth v. Ricci*, 161 Pa. Superior Ct., supra; *Commonwealth v. Tracey*, 130 Pa. Superior Ct. 15, 196 A. 549; *Commonwealth v. Lindner*, 133 Pa. Superior Ct. 196, 2 A. 2d 518; *Commonwealth v. Sharpe*, 138 Pa. Superior Ct., supra.

On the other hand, where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

In *Commonwealth v. Reid,* 123 Pa. Superior Ct. 459, 466, 187 A. 263, the Superior Court correctly said: " '. . . Identification may be made through the perception of any of the senses, and it is not essential that the witness should himself be free from doubt as to the correctness of his opinion . . .': Wharton's Criminal Evidence, Vol. 2, p. 1776, §1015. 'Proof beyond a reasonable doubt [of] the identity of the accused as the person who committed the crime, is essential to a conviction. The evidence of identification, however, need not be positive and certain [in order to convict]. A witness may testify that it is his belief, opinion, or judgment that the accused is the person who committed the crime. The indefiniteness and uncertainty in the testimony, of course, affects its weight': Wharton's Criminal Evidence, Vol. 2, p. 1626, §932. See Com. v. Roddy, 184 Pa. 274, 39 A. 211."

It is well to recall that proof of identity by eye-witness is not necessary—a defendant may be and often has been convicted where the evidence is entirely circumstantial and there is no evidence of identity. See: *Commonwealth v. Lowry* (driver of a getaway car), 374 Pa. 594, 600, 98 A. 2d 733; *Commonwealth v. Homeyer,* 373 Pa. 150, 94 A. 2d 743; *Commonwealth v. Danz,* 211 Pa. 507, 60 A. 1070; *Commonwealth v. Wentzel,* 360 Pa. 137, 61 A. 2d 309.

It follows that a weak identification,* together with other evidence in the case, may be sufficient to convince a jury of the defendant's guilt beyond a reasonable doubt—the credibility of the witnesses and the weight to be given their identification is, under proper instructions from the Court, exclusively for

---

* How far the Courts have gone in admitting weak or qualified or contradictory evidence of identity is apparent from *Commonwealth v. Ronello,* 251 Pa. 329, 96 A. 826; *Commonwealth v. Fink,* 93 Pa. Superior Ct. 57.

426

the jury. See: *Commonwealth v. Ronello*, 242 Pa. 381, 89 A. 553; *Commonwealth v. Sharpe*, 138 Pa. Superior Ct., supra; *Commonwealth v. Ronello*, 251 Pa. 329, 96 A. 826.

William Kloiber contends that the evidence against him being circumstantial the Commonwealth must prove facts and circumstances of such a character as to prove his guilt *to a moral certainty*. Of course it is clearly settled that a man may be convicted on circumstantial evidence alone, provided his guilt is proved beyond a reasonable doubt: *Commonwealth v. Lowry*, 374 Pa., supra; *Commonwealth v. Homeyer*, 373 Pa., supra; *Commonwealth v. Danz*, 211 Pa., supra; *Commonwealth v. Wentzel*, 360 Pa., supra.

However, there are a number of cases which say that "In order to warrant a conviction [on circumstantial evidence] the facts and circumstances proved must be of such character as to produce a moral certainty of the guilt of the accused beyond any reasonable doubt,—": *Commonwealth v. Libonati*, 346 Pa. 504, 31 A. 2d 95; *Commonwealth v. Linkowski*, 363 Pa. 420, 423, 70 A. 2d 278; *Commonwealth v. Wentzel*, 360 Pa., supra. The inclusion of the words "moral certainty" has been severely criticized by Wigmore, Trickett and by our own Court.*

---

* 9 Wigmore (3rd Ed. 1940), §2497, pp. 316-320 (Measure of Jury's Persuasion; Proof beyond a Reasonable Doubt; Rule for Criminal Cases). Chief Justice MAY: "Some Rules of Evidence: Reasonable Doubt in Civil and Criminal Cases". (American Law Rev., X, 642). Dean Trickett: "Preponderance of Evidence, and Reasonable Doubt" (The Forum, Dickinson School of Law, X, 76). Both articles quoted in Wigmore, op. cit., pp. 320-324; *Hopt v. Utah*, 120 U. S. 430, 440; *Commonwealth v. Wentzel*, 360 Pa., supra, dissenting opinion by Chief Justice MAXEY, page 153; *Commonwealth v. Bausewine*, 354 Pa., supra; *State v. Koski*, 100 W. Va. 98, 130 S.E. 100, 101. Cf. *Commonwealth v. Holt*, 350 Pa. 375, 387, 39 A. 2d 372.

In *Commonwealth v. Bausewine,* 354 Pa. 35, 46 A. 2d 491, Mr. Justice, later Chief Justice DREW, said (page 41): ". . . The facts and circumstances proved must, in order to warrant a conviction, be such as to establish the guilt of the defendant, *not necessarily beyond a moral certainty,* nor as being absolutely incompatible with his innocence, but at least beyond a reasonable doubt. The circumstantial evidence in this case is not such 'as reasonably and naturally to justify an inference of the guilt of the accused, . . . and of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt': Commonwealth v. Marino, 142 Pa. Superior Ct. 327, 16 A. 2d 314; Commonwealth v. Libonati, 346 Pa. 504, 508, 31 A. 2d 95; Commonwealth v. Holt, 350 Pa. 375, 387. . . ."

We are of the opinion that the use of the words "moral certainty" serves to confuse and befog the jury instead of enlightening and aiding them in determining whether the Commonwealth has convinced them of the guilt of the defendant beyond a reasonable doubt,* and that in the future it would be wiser if the charge did not contain any reference to "moral certainty". In the instant case defendants' objections are without merit because the trial Judge charged the jury more favorably to the defendants than was necessary.

We agree with the lower Court that the testimony was amply sufficient to prove the guilt of both defendants.

We have considered all the other contentions of the defendants but deem further discussion unnecessary.

The judgments entered in the Court below which were affirmed by the Superior Court and the Order of the Superior Court are all affirmed.

---

* "Reasonable doubt" has been recently defined in *Commonwealth v. Donough,* 377 Pa. 46, 51-52, 103 A. 2d 694.

OPINION BY MR. JUSTICE MUSMANNO, CONCURRING
AND DISSENTING IN PART:

I concur in the Majority Opinion but I can be
something less than enthusiastic about its citing with
approval the quotation from *Commonwealth v. Bause-
wine*, 354 Pa. 35, in which Justice DREW (later Chief
Justice) said: "The facts and circumstances proved
must, in order to warrant a conviction, be such as to
establish the guilt of the defendant, not necessarily
beyond a moral certainty, nor as being absolutely in-
compatible with his innocence, but at least beyond a
reasonable doubt." In fact, I do not agree at all with
the statement made by Chief Justice DREW that a con-
viction is proper even though the evidence is not ab-
solutely incompatible with innocence.

What happens to the time-honored rule that all
doubts are to be resolved in favor of the accused if a
jury is allowed to return a verdict of guilty when it is
not morally certain of the defendant's guilt and the
evidence is not incompatible with innocence? Although
a juror can with a good conscience return a verdict of
guilty where he is convinced of the defendant's guilt
beyond a reasonable doubt that does not amount to
mathematical certitude, I doubt that he can sleep
easily of nights if by his vote he sends a defendant to
prison or to his death when he entertains a moral in-
certainty as to his guilt.

This Court has often said: "When a charge of
crime is sought to be sustained by circumstantial evi-
dence, the hypothesis of guilt should flow from the
facts and circumstances proved, and be consistent with
them all. The evidence must be *such as to exclude
to a moral certainty every hypothesis but that of
guilt of the offense imputed*; the facts and circum-
stances must not only be consistent with and point to

the guilt of the accused, *but they must be inconsistent with his innocence.*" * (Emphasis supplied.)

Has the Supreme Court of Pennsylvania decided to jettison this universal and time-honored rule which has been the lifeboat saving many an innocent person from a sea of seemingly incriminating circumstance which otherwise would have engulfed him? Moral certainty means being honest with oneself. Once we allow convictions when the jurors are not honestly certain of the guilt of the accused, a hole beneath the water line has been driven into the ship of criminal law. To say that a jury may blast into disgrace a defendant while doubt beclouds the mind and uncertainty upsets the heart is to batter down one of the stoutest pillars of the temple of justice erected to protect the innocent as well as convict the guilty.

I concur in the results of this case but dissent from any view which holds that moral certainty is a dead letter in the jurisprudence affecting the lives and liberties of those accused of crime.

---

\* *Commonwealth v. Holt*, 350 Pa. 375, 397; *Commonwealth v. Bardolph*, 326 Pa. 513, 521; *Commonwealth v. Benz*, 318 Pa. 465, 472.